UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>)<br>Plaintiff, )<br>) Cause No. 1:21-cv- 0725<br>)<br>v. )<br>)<br>$390,420.00 UNITED STATES CURRENCY. ) | |

**COMPLAINT OF FORFEITURE IN REM**

The United States of America, by counsel, John E. Childress, Acting United States Attorney for the Southern District of Indiana, and Kelly Rota, Assistant United States Attorney, files its Complaint of Forfeiture in Rem pursuant to Supplemental Rules for Admiralty, Maritime and Asset Forfeiture Claims G(2), and alleges on information and belief as follows:

NATURE OF THE ACTION

1. The United States of America (the "United States") has commenced this action pursuant to the civil forfeiture provisions of 21 U.S.C. § 881 and 18 U.S.C. § 981(a), seeking forfeiture of the Defendant property based on violations of 21 U.S.C. § 801 *et seq*;

JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1345 (district courts have original jurisdiction of all civil actions commenced by the United States) and § 1355 (district courts have original jurisdiction of any action for forfeiture).

3. This Court has in rem jurisdiction over the Defendant Property pursuant to 28 U.S.C. § 1355(b) (forfeiture action can be brought in district in which any of the acts giving rise to the forfeiture occurred), and Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or

1

Maritime Claims and Asset Forfeiture Actions (clerk must issue a warrant to arrest property in the government's possession).

4. This Court is the appropriate venue in this matter pursuant to 21 U.S.C. § 881(j) and 28 U.S.C. § 1395, in that the forfeiture accrued in the Southern District of Indiana, and the Defendant Property is now, and during the pendency of this action will be, found within the Southern District of Indiana.

## DEFENDANT PROPERTY

5. The Defendant Property is three hundred ninety thousand, four hundred and forty dollars in United States Currency ("$390,420.00" or the "Defendant Property") (Asset Identification Number 20-CBP-000665) seized on September 12, 2020 from Spencer Mullen at the Indianapolis International Airport. The Defendant Property currently is being held by United States Customs and Border Protection ("CBP").

## FACTS BASIS FOR FORFEITURE

6. Except as otherwise noted, the following facts and information were discovered through the investigation and observations of HSI Resident Agent in Charge (RAC), Daron Babcock and the officers and agents who work with Babcock as members of the Indianapolis Circle City Task Force and within the Homeland Security Investigations office.

## AIRPORT SEIZURE

7. On September 12, 2020, at about 5:00 p.m., HSI Indianapolis Circle City Task Force (CCTF) conducted an investigation at the Indianapolis International Airport (IND). The CCTF consists of HSI Special Agents and Task Force Officers (TFO) with the Indiana State Police (ISP) as well as other local police departments.

8. Agents were advised that an individual named Spencer Mullen was traveling from Indianapolis to Portland, Oregon, with a large amount of cash. Based on this agent's training and experience, Portland, Oregon is known to be a source city for controlled substances.

9. RAC Daron Babcock, Task Force Officer (TFO) Kyle Freeman and Plainfield Police Department Canine (K9) Officer Mike Standiford met Mullen at his departure gate. While speaking with agents, Mullen consented to the search of his carry-on bag, and TFO Freeman saw multiple large plastic bags containing United States currency. Mullen told the officers that he withdrew the currency, totaling $388,000.00, from the Maps Credit Union ("Maps") in Portland, Oregon, before traveling to Indianapolis. Mullen further stated that he was the part owner of a hemp business called USA Hemp Direct. LLC ("Hemp Direct") and that he brought the money to Indianapolis to purchase cannabidiol (CBD) oil from a local company, but the deal fell through.[1] Agents asked Mullen to provide information about who he tried to conduct business with in Indiana, and who he stayed with during his visit, but Mullen did not provide this information.

10. TFO Standiford's canine alerted to the scent of a controlled substance on the carry-on bag, and to a separate backpack carried by Mullen. Mullen consented to the search of his backpack, and the search revealed $2,420.00 in cash.

11. HSI seized the currency from the backpack and the carry-on bag. The money within the backpack was contained in plastic bank bags, which were pre-dated 9/13/2020. The carry-on bag money was bundled with money bands without time stamps, bank names or initials of bank employees. Officers placed the currency in evidence bags, and TFO Standiford's canine, in a different location, alerted to the scent of a controlled substance on the currency itself. The

---

[1] The purchase of CBD oil is legal in Indiana.

agents then used a narcotics field test kit on the portion of the currency, which tested positive for marijuana residue. When the officers later counted the money, they found the following denominations:

- 1,416 $100 dollar bills
- 261 $50 dollar bills
- 11,786 $20 dollar bills
- 5 $10 dollar bills
- 3 $5 dollar bills
- 5 $1 dollar bills

The total amount seized was $390,420.00.



SUBSEQUENT INVESTIGATION

12.     Following the seizure, HSI continued to investigate Mullen and the seized currency. Agents contacted the Maps credit union, which confirmed that they issue the tamper resistant plastic bags, like the ones found in Mullen's carry-on, to customers but do not provide them to customers with enhanced monitoring accounts ("EMA"). A bank employee further confirmed that Maps requires EMA clients like Mullen to provide their own bags, to package their cash deposits, and place the bags in commercial drop safes. In this case, the signature on the bags matched Mullen's signature sample with the credit union, and the four numbers on the bags matched the account number (XXXXXX2224). That account number is associated with an Oregon marijuana distribution business named SJDM, Inc.  Mullen is the president of that

4

limited liability company. SJDM, is a licensed Marijuana Wholesaler dba as Pharmer's Market in the State of Oregon. It has a bank account with Maps. The SJDM checking account number with MAPS is XXXXXX224.

According to bank documents, SJDM does business as Pharmer's Market, which is described as a business that handles, stores, and distributes cannabis products. The business is located at 355 Industrial Circle, Suite D, White City, Oregon.[2]



13. HSI subpoenaed Mullen's Maps accounts and determined that Mullen did not have a Maps account for Direct Hemp. HSI further determined that deposits into the SJDM Maps account were made via cash, check, wire transfer and inter-bank account transfers. Withdrawals out of the SJDM Maps account were made with cash, checks, ACH debits, debit card, cashier's checks, wire transfer and inter-bank account transfers.

    a.    **Deposit Summary**

Between April 1, 2020 and September 30, 2020, the SJDM Maps account had deposits totaling $13,838,952.46. Of the $13,838,952.46 in total deposits, $8,264,067.79

---

[2] Agents investigating this address did not locate any signage for Mullen's business USA Hemp Direct.

consisted of cash deposits. The cash deposits accounted for 59.72% of the total deposits into the SJDM bank account. The total number of cash deposit transactions between April 1, 2020 and September 30, 2020 was 95 transactions.

b. **Withdrawal Summary**

Between April 1, 2020 and September 30, 2020, the SJDM Maps account had withdrawals totaling $13,915,647.27. Of the $13,915,647.27 in total withdrawals, $918,170.00 consisted of cash withdrawals. The cash withdrawals accounted for 6.60% of the total withdrawals out of the SJDM bank account. The total number of cash withdrawal transactions between April 1, 2020 and September 30, 2020 was 22 transactions. Between July 1 and September 12, 2020 (the seizure date) $182,652.00 in cash withdrawals were made from the SJDM Maps account.  Prior to September 12, 2020, the last cash withdrawal from the SJDM Maps account occurred on August 17, 2020 in the amount of $12,652.00

c. **Cash Deposit/Cash Withdrawal Pattern**

Between April 1, 2020 and the September 12, 2020 seizure date, there were 20 instances of cash being deposited into the SJDM account and then cash withdrawals occurring from the SJDM account within five days of those deposits. Of those 20 instances, eight cash withdrawals occurred on the same day as a cash deposit, six cash withdrawals occurred within one day of a cash deposit, two cash withdrawals occurred within two days of a cash deposit, three cash withdrawals occurred within three days of a cash deposit and one cash withdrawal occurred within five days of a cash deposit. Of the 20 instances, seven instances occurred in April 2020, four instances occurred in May

2020, seven instances occurred in June 2020, one instance occurred in July 2020 and one instance occurred in August 2020.

14. HSI also investigated Mullen's claim that he travelled to Indianapolis to purchase CBD oil, by speaking with representatives from the only operational Indiana hemp companies: Viobin, LLC; Biodynamic and NXT Labs, LLC. Those representatives indicated that they had no business meetings with Mullen in September and had no business relationships with Mullen at any time. The representatives from Biodynamic and NXT further stated that since hemp and CBD oil are legal in Indiana, hemp businesses conduct transactions like any other legitimate business, and they do not need to conduct cash transactions.

15. HSI deposited the seized money into a federal account, and then forwarded the seizure to CBP's Fines, Penalties and Forfeiture office (FP&F), which processes HSI seizures. On October 20, 2020, FP&F sent a seizure notice to Mullen. That notice stated that a claim had to be filed within 35 days, or by November 24, 2020. On November 23, 2020, a claim was filed on Mullen's behalf by counsel. In his claim, Mullen stated that his interest in the cash was as "owner and bailee."

16. Upon the filing of this claim, CBP transmitted the claim to the United States Attorney's Office for review.

PERTINENT STATUTES

17. Under 21 U.S.C. § 841(a)(1), it shall be unlawful for any person to knowingly or intentionally manufacture, distribute, or dispense a controlled substance; or … to possess with intent to distribute or dispense a controlled substance."

18. Marijuana is a Schedule I controlled substance. *See* 21 U.S.C. § 812(c); 21 C.F.R. § 1308.11(d)(23).

7

19. Pursuant to U.S.C. § 881(a)(6), the Defendant Property is subject to forfeiture because it constitutes: (1) money, furnished or intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act, 21 U.S.C. §§ 841 and 846; (2) proceeds traceable to such an exchange; and (3) money intended to be used to facilitate any violation of the Controlled Substances Act.

## PRAYER FOR RELIEF

20. Plaintiff United States repeats and incorporates by reference the paragraphs above.

21. By the foregoing and other acts, the Defendant Property constitutes money furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange and/or money used or intended to be used to facilitate a violation of 21 U.S.C. § 801 *et seq.*, and therefore is forfeitable to the United States pursuant to 21 U.S.C. § 881(a)(6).

WHEREFORE, the United States prays that the Clerk of the Court issue a warrant for the arrest of the Defendant Property pursuant to Rule G(3)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the Defendant Property be forfeited to the United States for disposition according to law; and that the Court enter a finding of reasonable cause for the seizure and issue a Certificate of Reasonable Cause pursuant to 28 U.S.C. § 2465.

                          Respectfully submitted,

                          JOHN E. CHILDRESS
                          Acting United States Attorney

By:    */s/Kelly Rota*
       Kelly Rota

        Assistant United States Attorney
        Office of the United States Attorney
        10 W. Market St., Suite 2100
        Indianapolis, Indiana 46204-3048
        Telephone: (317) 226-6333
        Fax: (317) 226-5027
        E-mail: Kelly.Rota@usdoj.gov

## VERIFICATION

I, Daron Babcock, being duly sworn, depose and say:

1. I am an investigative or law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, that is an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been employed by the United States Immigration and Customs Enforcement ("ICE"), and its predecessor, the United States Customs Service ("USCS") since June 2001. Prior to starting my federal law enforcement career, I was employed as a police patrol officer with the Tacoma Police Department from December 1996 through April 2001. I also worked briefly for the California Department of Justice prior to being hired by the USCS. I am currently assigned as the Resident Agent in Charge with the ICE, Homeland Security Investigations ("HSI") office in Indianapolis, Indiana, and have been so assigned since March 2020.

3. In addition to my official managerial duties, which includes the supervision of Special Agents and Task Force Officers assigned to the HSI Indianapolis Circle City Task Force, I investigate criminal violations of the federal narcotics laws, including, but not limited to, Title 21, United States Code, Sections 841, 843, 846, 848, 952 and 963. I also investigate violations of the federal money laundering and bulk cash smuggling laws, including, but not limited to, Title 18, United States Code, Sections 1956 and 1957, and Title 31, Section 5332. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code.

4. I have received training in investigations involving individuals smuggling, transporting, and distributing illegal narcotics. I am familiar with the ways in which drug traffickers conduct their business, including, but not limited to, their methods of importing and distributing controlled substances, their utilization of stash houses and other storage facilities, their use of telephones and digital display paging devices, and their use of numerical codes and code words to conduct their transactions.

5. I have also received training in money laundering and bulk cash smuggling techniques utilized by drug trafficking organizations to launder, conceal, and transport illicit financial proceeds related to narcotics crimes throughout the United States and across international borders. I am familiar with the ways in which drug trafficking organizations transport their proceeds, including, but not limited to, their methods of collecting and transporting bulk currency, their use of passenger and commercial vehicles (e.g. airplanes, bus lines, parcel delivery companies, and semi-trucks) for concealment, their use of currency "mules" and handlers to avoid law enforcement detection, their use of stash houses and other storage facilities, and their use of sophisticated compartments and cross-border smuggling techniques. The training described above was conducted at the Federal Law Enforcement Training Center in Glynco, GA during the Criminal Investigator Training Program and the Customs Basic Enforcement School as well as the DEA's Operation JETWAY interdiction training program conducted in Seattle, WA and Columbus, OH.

6. In addition to the above training, I have conducted and participated in multiple investigations with HSI that have resulted in the seizure of hundreds of kilograms of heroin, cocaine, and methamphetamine, as well as thousands of pounds of marijuana and in excess of $6 million dollars in United States Currency. I am familiar with and have participated in all of the

normal methods of investigation, including but not limited to, visual surveillance, controlled deliveries, undercover buys, execution of search and arrest warrants, management and use of informants, pen registers, and Title III investigations. I also have been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking offenses.

7. Narcotics trafficking organizations often amass large sums of currency from their narcotics trafficking and other related criminal activities. The individuals engaged in these illegal activities will attempt to "launder" their illegal profits; which is an attempt to make the illegal profits appear to be from legitimate, or legal, sources to prevent prosecution, avoid seizure and forfeiture of their ill-gotten gains, and to evade tax liabilities.

8. I know the distribution, manufacture, and sale of illegal narcotics is a violation of the Controlled Substances Act and is, therefore, a Specified Unlawful Activity (SUA) according to 18 U.S.C. § 1956(c)(7)(A) and 18 U.S.C. § 1961(1).

9. I have read the foregoing Verified Complaint In Rem and know the contents thereof, and that the matters contained in the Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief, and as to those matters I believe to be true.

10. The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement offices, as well as my investigation of this case, together with others, as a supervisory criminal investigator with HSI.

I hereby verify and declare under penalty of perjury that the foregoing information provided on pages 1 through 12 is true and correct.

Dated:  March 24, 2021

_____
Daron Babcock, Resident Agent in Charge
U.S. Immigration and Customs Enforcement
Homeland Security Investigations

### CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2021, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Spencer Muller
c/o Attorney Jeffrey Edelson
1455 SW Broadway
Suite 1900
Portland, OR 97201

Attorney Michelle H. Kerin
Angeli Law Group
121 SW Morrison Street, Suite 400
Portland, OR 97204
(971) 420-0222
Michelle@AngeliLaw.com

                                      JOHN E. CHILDRESS
                                      Acting United States Attorney

                        By:    *s/ Kelly Rota*
                                   Kelly Rota
                                   Assistant United States Attorney
                                   Office of the United States Attorney
                                   10 W. Market St., Suite 2100
                                   Indianapolis, Indiana 46204-3048
                                   Telephone: (317) 226-6333